UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

JUSTIN W. HAYNES                          CIVIL ACTION NO. 20-1281

                                          SECTION P

VS.

                                          JUDGE TERRY A. DOUGHTY

SHERIFF'S OFFICE OUACHITA                 MAG. JUDGE KAREN L. HAYES
PARISH, ET AL.


REPORT AND RECOMMENDATION

Plaintiff Justin W. Haynes, a prisoner at Ouachita Correctional Center ("OCC")

proceeding pro se and in forma pauperis, filed this proceeding on approximately September 30,

2020, under 42 U.S.C. § 1983.  He names the following defendants: Ouachita Parish Sheriff's

Office, Officer Justin Dewey, Officer Cody Cain, unidentified officers, Conway of Monroe,

Louisiana, and OCC.[1]

For reasons that follow, the Court should dismiss Plaintiff's claims against OCC,

Ouachita Parish Sheriff's Office, and Conway of Monroe, Louisiana.  The Court should also

dismiss Plaintiff's request to criminally prosecute defendants.  The Court should retain Plaintiff's

remaining claims.

Background

Plaintiff claims that on February 1, 2020, he entered his home and "did not come back

out until [he] heard [his] mother screaming due the K-9 attacking her."[2]  [doc. # 8, p. 2].  When

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under
28 U.S.C. § 636 and the standing orders of the Court.

[2] Plaintiff suggests that this, as well as the following events, occurred after a police vehicle
pursuit.  [doc. # 10].

he "walked out of the door of [his] home[,]" Officer Justin Dewey tackled him, handcuffed him, and, along with Officer Cody Cain and other unknown officers, brutally beat him with batons and kicked him repeatedly while he was face-down on the ground. [doc. #s 1, p. 3; 8, pp. 1-2; 10, p. 2]. He also claims that a "K-9 Officer" commanded a canine to attack him after he was handcuffed. *Id.* He maintains that he was unarmed, he was in his "boxer-briefs during arrest[,]" he posed no threat, and "the only evading or resisting [he] did was while in the vehicle." [doc. # 8, p. 1]. He "was never given the chance to resist/comply with any orders from the arresting officers." *Id.* at 2.

The officers allegedly broke Plaintiff's left ankle. [doc. # 1, p. 3]. He also suffered a "black eye, busted nose/mouth, [and] severe dog bites to [his] right shoulder . . . ." [doc. # 8, p. 1].

Plaintiff claims that officers ordered medical providers at Conway Hospital to refrain from providing medical treatment "even though" he was transported there in a wheelchair. *Id.*

Plaintiff claims that at OCC, he was refused medical care for his ankle. *Id.* at 2. He requested "assistance upon arrival at Conway and at OCC" because he had severe pain, a broken bone, and was unable to use his left leg to walk. *Id.* at 2-3. He "requested an x-ray and any kind of support (boot/cast) for [his] leg[,]" but he was refused. *Id.* at 3. He was "forced to maneuver around the entire time without crutches while it heeled." *Id.* He did receive "IBU 800 and antibiotics" for the dog bites. *Id.* He adds: "I requested another time to get proper medical attention for my ankle and was refused anything but IBU 800. All the while it was obvious I couldn't walk without help or support" *Id.*

Plaintiff was charged with unauthorized use of a motor vehicle, simple criminal damage to property, aggravated assault on a police officer, flight from an officer, and resisting an officer.

*Id.* at 2.  He maintains that all charges are pending.  *Id.*  However, he may be mistaken: the Ouachita Parish District Attorney informed the Court that, on February 27, 2020, the State declined to prosecute Plaintiff for aggravated assault on a police officer and resisting an officer.[3]

Plaintiff seeks "compensation for unnecessary pain and suffering."  *Id.*  He adds, "I would like officers to be tried in front of the courts."  *Id.*

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis.  As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4]  See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis*,* his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual

---

[3] TELEPHONE CALL TO OUACHITA PARISH DISTRICT ATTORNEY (January 28, 2021).

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly,* 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett,* 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp,* 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153,* 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Unamenable Entities

Plaintiff names OCC and Ouachita Parish Sheriff's Office as defendants. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. Ouachita Parish Sheriff's Office and OCC do not qualify as juridical persons. Accordingly, the Court should dismiss Plaintiff's claims against both entities.

## 3. Separation of Powers

Plaintiff writes, "I would like officers to be tried in front of the courts." [doc. # 8, p. 1]. To the extent Plaintiff asks the Court to criminally prosecute the officers, he does not seek cognizable relief.

There is no constitutional right to have a person criminally prosecuted. *Oliver v. Collins*,

914 F.2d 56, 60 (5th Cir. 1990).[5]  Investigating and prosecuting possible criminal activities lies in the exclusive jurisdiction of the executive branch of government.  In the federal context, for example, prosecuting criminal actions lies in the discretion of the Attorney General of the United States and duly authorized United States Attorneys.  In Louisiana, prosecuting criminal actions lies in the discretion of the Louisiana Attorney General and the various District Attorneys.  See LA. CODE. CRIM. PROC. arts. 61 and 62.  Accordingly, to the extent Plaintiff asks the Court to investigate defendants or charge defendants with crimes, the Court should dismiss the request as frivolous.[6]

**4. Conway Hospital**

Plaintiff claims that medical providers at Conway Hospital, under the arresting officers' orders, did not provide any medical treatment.  He requested "assistance upon arrival at Conway" because he had severe pain, a broken bone, and was unable to use his left leg to walk.  He "requested an x-ray and any kind of support (boot/cast) for [his] leg[,]" but he was refused.

---

[5] See *U.S. v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

[6] Plaintiff should, if he wishes, direct his concerns to a local, state, or federal police agency. That said, Plaintiff should be aware that, if a prosecuting authority investigates and chooses to forego filing charges, "[t]he decision to file or not file criminal charges . . . will not give rise to section 1983 liability."  *Oliver*, 904 F.2d at 281.  The courts "allow the government discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek."  *U.S. v. Lawrence*, 179 F.3d 343, 348 (5th Cir. 1999); see, e.g. *Hymel v. Champagne*, 2007 WL 1030207, *2 (E.D. La. 2007) (denying a plaintiff's request to investigate a correctional center: "this Court has no authority to issue such an order and plaintiff has no constitutional right to such an order. Moreover, to the extent that plaintiff is alleging that a criminal investigation should be instituted, such investigations are solely within the purview of law enforcement authorities.").

Plaintiff, however, seeks relief only from Conway Hospital, and he does not allege that the hospital—rather than the providers—violated his constitutional rights.  "A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"  *Jones v. Lowndes Cty., Miss.,* 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James v. Tex. Collin Cnty.,* 535 F.3d 365, 373 (5th Cir. 2008)).

It appears Plaintiff seeks to hold the hospital vicariously liable for the providers' (or the officers') alleged actions.  However, "a defendant cannot be held liable under § 1983 on a theory of vicarious liability, including *respondeat superior*."  *Hallcy v. Paxton*, 773 F. App'x 209, 210 (5th Cir. 2019).

To the extent Plaintiff maintains that the hospital is a body of local government which employed the providers,[7] he does not allege that the hospital maintained a custom, policy, or practice of refusing to treat injuries for which patients request care or which are obvious.[8]  See *Jones*, 678 F.3d at 349  (quoting *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 690-91 (1978)) ("If the defendant is a municipality or other body of local government, the alleged deprivation must be connected to 'a governmental custom,' 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers.'").

---

[7] The undersigned does not opine on whether the providers or the hospital are state actors.

[8] To the extent the hospital is a state actor, and to the extent it is not a body of local government, it is both immune under the Eleventh Amendment and not a "person" under Section 1983.  See LA. REV. STAT. § 40:2002.7 (E.A. Conway Memorial Hospital in Monroe, Louisiana is under the Department of Health and is a "state operated general hospital . . . ."); see also *Darlak v. Bobear*, 814 F.2d 1055, 1059 (5th Cir. 1987) (The Eleventh Amendment bars suits in federal court for money damages and injunctive relief filed by citizens of a state against their own state or state agency); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989) (states and "arms of the state" are not "persons" under Section 1983).

Accordingly, the Court should dismiss Plaintiff's claims against Conway Hospital.

**5. Medical Care**

Plaintiff allegedly suffered a "black eye, busted nose/mouth, severe dog bites to [his] right shoulder, and a broken ankle." He claims that, at OCC, he was refused medical care for his ankle. However, Plaintiff faults only OCC for the actions (or inaction) above, and as explained before, OCC is unamenable to suit.

Plaintiff also claims that the arresting officers ordered medical providers at Conway Hospital to refrain from providing medical treatment for his broken left ankle "even though" he was transported there in a wheelchair. He requested "assistance upon arrival at Conway" because he had severe pain, a broken bone, and was unable to use his left leg to walk. He "requested an x-ray and any kind of support (boot/cast) for [his] leg[,]" but he was refused. "They refused ANY kind of medical attention to [his] ankle at [the] hospital per officers' orders . . . ." [doc. # 8, p. 1].

Plaintiff did receive "IBU 800"—thus suggesting that he merely disagrees with the care he received and that, despite the officers' alleged actions, the hospital providers were not deliberately indifferent to his needs—but he does not specify whether he received IBU 800 at the hospital or later at OCC. Even assuming he received IBU 800 at the hospital, this minimal treatment for an alleged broken ankle, severe pain, and inability to walk could, liberally construed, amount to no treatment at all.

Plaintiff does not specifically name the *arresting officers* who ordered medical providers not to treat him. However, he does allege that Officers Dewey and Cain, along with unidentified officers, arrested him.

Construed liberally and in Plaintiff's favor, the Court should retain these claims against Officer Dewey, Officer Cain, and unidentified officers. See, e.g., *Nielsen v. Rabin*, 746 F.3d 58 (2d Cir. 2014) (finding a plausible claim where, after an alleged police beating, the plaintiff alleged that police officers told a physician not to treat him because he had attacked a female police officer, that the physician was influenced by those statements, and that the physician only minimally examined arrestee despite his complaints of severe pain from significant injuries).

**6. *Heck v. Humphrey* and *Wallace v. Kato* Considerations**

Plaintiff alleges that Officer Dewey, Officer Cain, and unidentified officers utilized excessive force on arrest. Plaintiff was charged with aggravated assault on a police officer, flight from an officer, and resisting an officer. [doc. # 8, p. 2].

Plaintiff alleges that all of his charges are pending. But, as above, he may be mistaken: the Ouachita Parish District Attorney informed the Court that on February 27, 2020, the State declined to prosecute Plaintiff for aggravated assault on a police officer and resisting an officer. If the State did decline to prosecute Plaintiff, *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007), do not bar his excessive-force claims.

Plaintiff also alleges that he was charged with flight from an officer. However, he suggests that the charge—as well as his assault charge—arose from a vehicle pursuit *prior* to the alleged excessive force. [doc. # 10, p. 1]. In other words, Plaintiff temporally and conceptually distinguishes these charges from the alleged excessive force. Construed liberally and in his favor, the Court should retain the excessive-force claims.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Justin W. Haynes's claims against OCC, Ouachita Parish Sheriff's Office, and Conway of Monroe, Louisiana, as

well as Plaintiff's request to criminally prosecute defendants, be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.  The Court should retain Plaintiff's medical care and excessive-force claims against Officer Dewey, Officer Cain, and unidentified officers.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this  29th  day of January, 2021.

Karen L. Hayes
United States Magistrate Judge